Mary Jo O'Neill, AZ Bar No. 005924
Sally C. Shanley, AZ Bar No. 012251
Diana C. Weaver, AZ Bar No. 021734
Equal Employment Opportunity Commission
3300 N. Central Ave., Suite 690
Phoenix, Arizona  85012
Telephone:  602-640-5032
Fax:  602-640-5009
Email:  mary.oneill@eeoc.gov
           sally.shanley@eeoc.gov
           diana.weaver@eeoc.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | **CV 07-1843 PHX ROS** |
| Plaintiff, | **PLAINTIFF EEOC'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| Love's Travel Stops & Country Stores, Inc., an Oklahoma corporation, | |
| Defendant. | |

Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission"), alleges that Sarah Gregoire and Monica Day were subjected to sexual harassment while employed at Love's Travel Stops and Country Stores in violation of Title VII of the Civil Rights Act of 1964.  The Commission respectfully requests that the Court deny Love's Motion for Summary Judgment because genuine issues of material fact exist and Defendant is not entitled to judgment as a matter of law.  Sarah Gregoire and Monica Day experienced severe and pervasive sexual harassment by customers of Love's Travel Stop in Buckeye, Arizona. As the facts set forth, they

complained many, many times to numerous managers and nothing was done. Defendant

has now filed for judgment as a matter of law, citing five facts in its Statement of Facts.

Not only are all of Defendant's "facts" disputed, they are also insufficient to sustain

summary judgment in Defendant's favor because they presume that there was only one

incident of sexual harassment, which is blatantly untrue as set forth in Plaintiffs

Statement of Facts.[1]

     This response is supported by the attached Memorandum of Points and

Authorities, Plaintiff's Separate Statement of Facts in Opposition to Defendant's Motion

for Summary Judgment ("SF"), and Plaintiff's Statement of Controverting Facts

("PCF"), which are incorporated herein by reference.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    FACTUAL BACKGROUND

     Sarah Gregoire was hired as a diesel cashier by Love's on June 22, 2005, at the

Buckeye, Arizona location.  She was 20 years old at the time of her hire.  (SF 1)   She

worked the graveyard shift from midnight to 9:00 a.m.  (SF 2) During her employment,

Ms. Gregoire was subjected to numerous sexually inappropriate comments by

customers.  (SF 4) On one occasion Ms. Gregoire was speaking with two members of

management when a customer grabbed her by her shoulders from behind.  She knocked

---

[1]  Nor should Defendant be allowed to "supplement" these facts in its reply.  It is improper for the Defendant to proffer new evidence in any reply to the Commission's Response to Summary Judgment because it is not provided for in the Local Rules of Civil Procedure.  Fed. R. Civ. P. 56; *see Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996), *cert. denied* 522 U.S. 808 (1997) (court should not consider new evidence without providing non-moving party the opportunity to respond).

into him and told him not to touch her.  The customer walked away, but later returned and poked her neck with a pen. Although managers Tammie Tokeshi and Paul LNU were present, no action was taken to address the inappropriate behavior by the customer.  (SF 5)  In fact, on numerous occasions Ms. Gregoire was told by managers, Ms. Tokeshi, Felicia Allen and T.J. Gimble, "this is a truck stop.  Get used to it.  Deal with it."  (SF 6)

Ms. Gregoire had a customer follow her into the shower area and she notified Pat Coomes or another manager.  No action was taken to address or investigate the incident.  (SF 7)  Pat Coomes was demoted from District Manager to General Manager at the Buckeye store on or about September 1, 2005.  (SF 10)  After Mr. Coomes was demoted to the manager of the Buckeye store, he told the staff that the cashiers were not required to clean the showers.  The reason for this change in procedure was to keep the cashiers at the counter to avoid theft, not to address sexual harassment.  (SF 12-13)  Ms. Gregoire and the other cashiers, however, were still required to go to the shower area to retrieve various supplies and the harassment in this area continued.  (SF 14)

One regular customer worked for a company called "Camel Express."  His language and actions were so vulgar that the employees referred to him as "titty man." He frequently referred to an employee's "pussy" or "nipple."  (SF 18-19) The Camel Express customer made references to "chewing on your nipple" or "spreading your thighs."  (SF 18-19)  Vance Cole, Restaurant Manager, also heard the customer refer to chicken breasts as "titties."  (SF 20)

In another instance, Ms. Gregoire told supervisors, Marguerite Welty, Tammie

Tokeshi, Felicia Allen, and T.J. Gimble,  that a customer told her he wanted to "squeeze her nipples."  (SF 8)  Again Ms. Gregoire was told by management to "get used to it." (SF 9)

Monica Day was hired as a cashier at Love's on December 7, 2004.  (SF 24)  At the time of her employment at Love's, Ms. Day was 18 years old and was attending high school during the day.  She was estranged from her mother and supporting herself while going to school. (SF 26)  During her tenure at Love's she heard numerous sexually inappropriate comments by customers and management failed to take action.  One customer frequently made references to having sexual intercourse with her, invited Ms. Day to go outside with him, and invited her to have a drink.  When Ms. Day told the customer she was not interested, he said to her "Hey, baby, I could rock your world." (SF 27-28)  Ms. Day reported this conduct to supervisor, Felicia Allen, and Ms. Allen just laughed.  (SF 29)

Another customer told Ms. Day that because of her small stature, she could perform oral sex on him without getting on her knees.  (SF 30)  In one incident, a customer tried to stroke Ms. Day's hand and told her he would wait for her to get off of work and then she could come over to his truck so he could "get inside [her]."  (SF 31)

On Valentine's Day a customer gave Ms. Day a card that said "It's Valentine's Day Sweetie, have some chocolate on me!"  The inside of the card stated, "I mean that literally . . . Have it on me!  (start at my belly button!)"  (SF 32)

Ms. Day made numerous attempts to address the harassment with management. She complained to Manager T.J.Gimble that she was being harassed and asked what

steps she could take to address the harassment.  Ms. Day's request was ignored and no

action taken.  (SF 34)    She reported the harassment to Ms. Allen on numerous

occasions, and no action was taken.  (SF 33, 35)

Inappropriate sexual comments to employees were heard by numerous employees

at Love's.  Mr. Cole heard customers ask cashiers out on dates.  Cashiers also reported

to Mr. Cole that the customers had asked them to go to California in their trucks.  (SF

21)  Mr. Cole states that he did not address this behavior with the customers because the

cashiers did not specifically notify him that the comments bothered them.  (SF 22)

Administrative Assistant Bianca Munoz also heard truckers ask employees out on dates

and for employee's telephone numbers.  (SF 23)

During a team meeting, Ms. Gregoire with the support of other cashiers, notified

Manager Coomes of the harassment by the customers.  She asked Mr. Coomes what she

should do and he told her to report the conduct to management.  (SF 15) Although both

Ms. Day and Ms. Gregoire had complained to management about harassment, no action

was taken to address their concerns.  (SF 7, 8, 16, 29, 33, 34, 35)

On September 26, 2005, Ms. Gregoire faxed a letter to Love's Corporate

Headquarters complaining about her work environment at the Buckeye location.  Ms.

Gregoire complained about Manager Coomes's management style, her pay, and

harassment by customers.  She explained that she did not wish to quit her job because

she enjoyed the work.  (PCF 4)  Love's decided to terminate Ms. Gregoire's

employment.  (SF 40)

## II.     SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only when "there are no genuine issues as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.  R. Civ. P. 56(c).  A genuine issue of material fact exists "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v.  Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  In resolving the motion, the court is required to view the evidence in the light most favorable to the non-moving party. *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) (quotation omitted).  The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor.  *Dufay v. Bank of Am. N.T. & S.A. of Ore*., 94 F.3d 561, 564 (9th Cir. 1996) (quoting *Anderson*, 477 U.S. at 255).    Questions of credibility are to be left for a jury to decide.  *Anderson*, 477 U.S. at 255.

## III.    ARGUMENT

### A.  Sarah Gregoire and Monica Day were Subjected to Unlawful Sexual Harassment

The two young women, Sarah Gregoire and Monica Day were subjected to sexual harassment by customers at Love's Travel Stop.  Management knew about the harassment, or should have known, but did not take appropriate steps to stop it or prevent future harassment.  Defendant has requested judgment as a matter of law, based on five statements of fact, implying that there was only one victim, one incident and one complaint.  As set forth in EEOC 's Statement of Facts, there are two victims on whose

behalf the Commission seeks relief, the sexual harassment was frequent and severe, and Love's failed to take any meaningful corrective action.  Based on the totality of circumstances, at the very least, substantial issues of fact preclude judgment as a matter of law.

Love's can be liable for sexual harassment by its customers where, as here, the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. *Powell v. Las Vegas Hilton Corp.*, 841 F.Supp. 1024, 1027 (D. Nev. 1024); 29 C.F.R. § 1604.11(e)[2].

Harassment based on a hostile work environment exists where the victims were subjected to a work environment that was both subjectively and objectively hostile. *Harris v. Forklift Systems*, 114 S.Ct. 367, 370 (1993); *Ellison v. Brady*, 924 F.2d 872, 878-79 (9th Cir. 1991).  In the Ninth Circuit, sexual harassment is analyzed from the perspective of the reasonable victim.  *Ellison,* 924 F. 2d at 878 (citation omitted).   In this case, that would be young women and teenage women working at a truck stop in order to support themselves.

The circumstances to be considered include, but are not limited to the frequency of the offensive conduct, its severity, whether it was physically threatening or humiliating, whether it interfered with the employee's work performance . . . and

---

[2]  Defendant cites *Trent v. Valley Electric Ass'n, Inc.,* 41 F.3d 524 (9th Cir.1994) for the proposition that Love's must somehow ratify or acquiesce in the behavior of its customers.  *Trent*, however, is inapposite.  In *Trent*, the court addressed whether a complaint about an outside vendor could form the basis of a retaliation claim, not the standard for customer harassment.

whether the alleged harasser was a co-worker or supervisor. *Burlington Industries v. Ellerth*, 118 S.Ct. 2257, 2264 (1998); *Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2293 (1998); *Oncale v. Sundowner Offshore Services, Inc.*, 118 S.CT. 998, 1003 (1998); *Harris v. Forklift Systems*, 114 S.Ct. 367, 370 (1993). While any relevant factor may be considered, no single factor is required. Moreover, there is no need for the conduct to be psychologically injurious to be considered harassment. *Harris v. Forklift Systems*, 114 S.Ct. 367, 370 (1993); *Fuller v. City of Oakland*, 47 F.3d 1522, 1527, (9th Cir. 1995).

Plaintiffs need not show that the harassment was both severe and pervasive, although in this case it was both. *Ellison,* 924 F.2d at 878 (*citing King v. Board of Regents,* 898 F.2d 533, 537 (7th Cir.1990) ("the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.").

In its motion for summary judgment, the Defendant relies only on Ms. Gregoire's one complaint that she was harassed when she cleaned the showers to support its claim that the conduct at issue is not actionable. Ms. Gregoire, however, not only complained many times of inappropriate comments and touching when she was required to clean the showers, but also complained many times about harassment that occurred during her normal duties at the cash register. Specifically, the offensive conduct included being grabbed by a customer, told "I want to squeeze your nipples", hearing a customer refer to "pussy" and "nipple". (SF 8) Ms. Day and Ms. Gregoire notified Managers Tokeshi,

Allen, and Paul LNU of the harassment when it occurred, but no action was taken. (SF 5, 8, 29)

Similarly, Ms. Day recalls numerous incidents of inappropriate conduct by customers that was not addressed by management. Ms. Day was propositioned for sex by a customer that frequented the store.  He invited Ms. Day to his home, to go outside, or have a drink with him.  (SF 27)  A customer told Ms. Day that she could perform oral sex without getting on her knees because of her small stature.  (SF 30) Another customer told Ms. Day he would wait for her to finish work and she could come over to his truck so he could "get inside [her]." (SF 31)  These women are not required to recall every specific time or exactly what was said.  *See Dominguez-Curry v. Nevada Trans. Dept.*, 424 F. 3d 1027, 1039 (9th Cir. 2005) (plaintiff's failure to recall precise dates and inability to recall sexual remarks verbatim did not defeat her claim).  As detailed above, the women in this case were subjected to constant offensive sexual comments and inappropriate touching by the customers in the store, and Defendant, despite its knowledge of such conduct, failed to take any corrective action.

Clearly the victims in this case experienced sexual harassment that was both severe and pervasive.  The actions at issue in this case are similar to those addressed in *Powell v. Las Vegas Hilton Corp.*, 841 F. Supp. 1024 (D. Nev. 1992).  In *Powell*, the district court denied summary judgment, finding that a casino dealer's complaints of two incidents of verbal abuse and three incidents of staring by customers could be found sexual in nature, and sufficiently severe and pervasive to support a harassment claim. *Id.* at 1028-29.  Considering all the factors set forth in the case law, Plaintiffs have

provided substantial evidence that the sexual harassment in this case was both severe and pervasive.  Certainly, Plaintiffs have raised a genuine issue of material fact with respect to this issue and summary judgment is not warranted.

The Defendant also erroneously claims that the conduct set forth in this case did not unreasonably interfere with the victims' work performance.  To support this theory, the Defendants cite to the letter Ms. Gregoire wrote to corporate headquarters complaining about her manager and the customer's harassment.  In the letter, Ms. Gregoire stated "I love my work, I'm good at my job, I do more than is expected of me and I want to keep working at Love's."  (PCF 4)  Based on this statement, the Defendants claim the harassment did not interfere with Ms. Gregoire's work performance.

However, while Ms. Gregoire explained at her deposition that she enjoyed her job duties, she was also clear about what she did not enjoy and what her complaints of harassment were and how they affected her.  Specifically, she enjoyed the multi-tasking aspect of the diesel cashier position.  (PCF 4, SF 3, Ex. G, S. Gregoire letter dated September 26, 2005 (L0028-34))  Notably, however, in the same letter cited by the Defendants, Ms. Gregoire tells Love's that customers are asking "[c]an I have two of your breasts?" and "I'd like to squeeze your nipples".  In the same paragraph she tells Love's "[t]his behavior makes me feel uncomfortable, **distracts me from my work**, and I wanted some direction as to how to handle this type of harassment."  S. Gregoire letter dated September 26, 2005 (L0028-34, p. 2) (emphasis added)).  Ms. Gregoire was clearly affected by the customer's harassment, and it affected her job duties.

Ms. Day also testified that the harassment had an impact on her.  At times, Ms. Day became so upset about the harassment at work that she would cry.  (37)  She also attempted to secure alternative employment, but was unable to find any available positions.  (SF 38)

Ms. Day and Ms. Gregoire each testified that the customer harassment had an impact on them and interfered in their lives.  Neither Ms. Day nor Ms. Gregoire were required to quit their employment with Love's in order to support their claim of hostile work environment.  *Ellison*, 924 F.2d at 878 ("[i]t is the harasser's conduct which must be pervasive or severe, not the alteration in the conditions of employment.")  *Harris v. Forklift Systems*, 114 S.Ct. 367, 370 (1993) (stating that no single factor is required to establish a hostile work environment).

## B.   Love's Is Liable For The Sexual Harassment Of Ms. Gregoire and Ms. Day

Defendant is liable for the harassment of Ms. Gregoire and Ms. Day by Love's customers.  An employer may be held liable for third party harassment of its employees if it ratifies or condones the behavior by failing to investigate and remedy the conduct after learning of it.  *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005); *see also Folkerson v. Circus Circus Enterprises, Inc.* 107 F.3d 754, 756 (9th Cir. 1997) (employer liable for sexual harassment by a private individual where employer ratifies or acquiesces to harassment by failing to take immediate and/or corrective action).  Here, Love's management observed the harassment by customers and failed to take action to address it.

Ms. Gregoire testified that a customer rubbed her shoulders and poked her neck with a pen when she was talking to members of management, and no action was taken to correct the behavior.  Ms. Day testified that she complained to management about a customer that used vulgar language towards her, and he remained in the store without any action by management.  (SF 33)  Ms. Gregoire and Ms. Day continuously advised management of the harassment and no action was taken.  Love's was aware of the harassment of Ms. Gregoire and Ms. Day and are liable for failing to remedy the behavior.

Defendant attempts to argue that Pat Coomes took  appropriate remedial action when he assigned maintenance, rather than the cashiers, to clean the showers.  This action, however, addressed only one complaint of harassment several months after the conduct had begun.  Moreover, there is **no** evidence that Mr. Coomes took this action to address harassment, rather the change in duties was to keep the cashiers near the registers to reduce theft. (SF 13)   No action had been taken on the numerous prior complaints by Ms. Day and Ms. Gregoire.

Love's had an obligation to address the complaints of harassment before Coomes reassigned the shower duties.  Ms. Day's employment with Love's was terminated prior to Coomes's demotion to Manager. (SF 10, 25)  Therefore, the inappropriate sexual conduct that she was subjected to occurred several months prior to the reassignment of the shower duties.  "Once an employer knows or should know of harassment, a remedial obligation kicks in." *Fuller v. City of Oakland*, 47 F.3d 1522, 1528-29 (9th Cir.1995). Therefore, "if 1) no remedy is undertaken, or 2) the remedy attempted is ineffectual,

liability will attach." *Id*. at 1528–29.  Notice of the harassment "triggers an employer's

duty to take prompt corrective action 'reasonably calculated to end the harassment.'"

*Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) (quotation omitted).

Defendant's remedial measures must be "reasonably likely to prevent the misconduct

from recurring."  *Kilgore ve. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th

Cir. 1996) (quotation omitted). "The reasonableness of the remedy depends on its ability

to : (1) 'stop harassment by the person who engaged in harassment;' and (2) 'persuade

potential harassers to refrain from unlawful conduct.'"  *Nichols v. Azteca Rest. Enter.,*

*Inc.*, 256 F.3d 864, 876 (9th Cir. 2001) (quoting *Ellison,* 924 F.2d 882).  By failing to act

or address Ms. Day's and Ms. Gregoire's complaints of harassment, Love's is liable for

the inappropriate conduct of its customers.

## IV.  CONCLUSION

For the reasons stated above, the EEOC requests that the Court deny Defendant's

motion for summary judgment.


DATED this 13th day of April, 2009.

MARY JO O'NEILL
Regional Attorney

SALLY C. SHANLEY
Supervisory Trial Attorney

s/Diana C. Weaver
DIANA C. WEAVER
Trial Attorney

EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION
Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, Arizona  85012

Attorneys for Plaintiff


**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 13th day of April, 2008, I electronically transmitted the

attached document to the Clerk's Office using the ECF System for filing and transmittal

of a Notice of Electronic Filing to the following ECF registrants:


Nathan L. Whatley
McAfee & Taft APC
211 North Robinson
10th Floor 2 Leadership Square
Oklahoma City, OK 73102-7103

J. Greg Coulter
LITTLER MENDELSON
A professional Corporation
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016


<u>s/Diana C. Weaver</u>
Diana C. Weaver